The next case is Rosano v. Remsenburg. Has Ms. Rosano appeared? Apparently not. Accordingly, we'll proceed to the third case, Mara v. Rilling. Thanks. The third case is Rosano v. Remsenburg. You may proceed. Thank you. Judges of the Court of Appeals, good morning. My name is Tom Gerard, and I'm arguing this morning on behalf of the defendants. Your Honors, I submit that the critical issue in this appeal is whether the police can prepare a second photo array when the police realize that there's a photograph in the first array that was outdated and did not resemble the person depicted, because that's what happened in our case. Our case involves an assault that occurred at a New Year's Eve party that the police found out about the following morning, some eight hours later. And when they went to talk to the students, it's mostly a college student party. In light of all that happened that late afternoon, I guess it was, why is the array, the two arrays, why do you say that that is the principal reason rather than a reason? Because the second photo array that had a current photograph of the plaintiff was identified with 100% certainty by an eyewitness to the assault. And the eyewitness then signed a sworn statement saying that this is the person who committed the assault. So you don't need anything from the interview of the plaintiff that happened thereafter. And you don't get much from the interview anyway. All you really get- No, but let's stick with the array. What you're saying is that if the array is okay, then nothing else really matters. There was sufficient, there was no violation of his client's rights. That's exactly right. The photo array resulted in a 100% identification of the plaintiff as the assailant, followed by a sworn statement, combined with another statement of someone who knew the plaintiff and the time of the event, and you put that together, that's at minimum arguable probable cause. And so, you don't need anything else. When you go to the, if you want to apply the corrected affidavits rule and take everything related to that interview of the plaintiff out of the affidavit, all you're taking out was a statement that the plaintiff said, I was so drunk, I was some parts of the night I don't remember. That's not really inculpatory, it's kind of neutral really. But what you get in terms of probable cause is, there's an eyewitness who- The argument though is that the photo array was suggestive, because Mr. Mara's photograph was in both arrays, and so whoever's looking at the second array might have had a suggestion already implanted, because of the first array. I understand that's the argument. I'm showing you appendix 293. This is what the plaintiff looked like when he arrived at college in September of 2009. And this is what the plaintiff, appendix 294, looked like on the day after this event when he's halfway through his senior year of college. So to the, you're arguing to us that we should conclude as a matter of law that the second photo array was not suggestive. Well, it's even one beyond that, because I'm here in a civil suit with a police officer who's been charged with individual liability for making a decision to show that second photo array once he meets this man and realizes it doesn't look anything like the photograph the university gave us. So it's not just the constitutional issue, it's was the case law so clearly established in our circuit such that every reasonable police officer would know if I get a current photograph- Did the district court consider that issue? No. The district court erred in not doing a proper qualified immunity analysis. The district court, it was incumbent upon the district court when faced with this scenario of qualified immunity to look at the second circuit case law. I've provided that case law in pages 38 to 41 of my brief. In conception, we've held that a suspect's picture in a second array, after a witness fails to identify him in a first array, is not automatically suggestive. So that's why I thought that what you were asking us to find was that when we look at the facts and circumstances, it's not suggestive. Because if there's a question as to whether it could have been suggestive, then you have a fact issue, don't you? I don't think, no, I look at it differently. I say that I am asking you to find it's not suggestive as a matter of law, because you can do that. But even if you find that it's debatable, then I'm in qualified immunity territory. Then the police officer makes the judgment to show the second array. Maybe, because if the question, if the second photo array had him with other people who didn't look at all like him, you would probably not have a question of fact. I understand that it has to be clear to the officer that what he's doing is violative of the Constitution. But nevertheless, what is it that you think would allow us to find that even if we think it's suggestive, a reasonable officer wouldn't have thought so? Well, there's case law that begins on page 39 of my brief. There's Second Circuit cases, United States versus Thai, second showing a photograph array to a robbery victim in which the defendant's black and white photograph from a prior array had been substituted with the defendant's uncropped color photograph was not unduly suggestive, even though the victim didn't pick him in the first array. There's like three or four more cases- Yes, these are decisions of the Court of Appeals. So if we have a conscientious police officer who wants to do his best to follow the Constitution and he reads these decisions, he's not going to think that it is beyond constitutional debate if I create a second photo array. Right, so your argument is that if we don't find that violation, then there's no Fifth Amendment violation either because the questions were, to the extent he was questioned, he says in a coercive manner, the question would just be taken out of the warrant and there would be no prejudice. Yes, that takes care of that issue. How do you deal with the argument that there was nevertheless malicious prosecution here? Well, the malicious prosecution begins once the arrest is made, and what happened in terms of the timeline. Does that also go out because of the probable cause? Yes, it absolutely would. It absolutely would because there was probable cause to initiate this. It's telling that the three policemen, police officers who prepared the arrays and showed them, they were granted summary judgment and that wasn't appealed. There was nothing defective about that array process. And if you're a detective who says, whoa, whoa, whoa, I just met this guy and he looks like this. We need to do a different array and then other police put a fair array together. They've all been granted summary judgment. How is this man personally liable? The plaintiff argues that the coercive interrogation was intimidating and I'm going to ask him whether that means he's seeking some kind of emotional harm or whether that's only a state tort or what. What's your position on the fact that he was lied to, that all of that apparently had traumatic consequences? What's your response to that as a standalone claim? As a standalone claim, it bears emphasis, this is an interview that was voluntary. The plaintiff asked for it. He had his mom on the phone. They arranged for it with the police. He was told when he walked in, you can get up and walk out any time. You do not have to talk to us. And it lasted about an hour and a half. He wasn't handcuffed. There was no physical harm to him. And more importantly, the tactics used are approved. Some other facts, I mean the police blocked his car. They wouldn't let him use his cell phone. They blocked the door to the small room that he was in. He asked to speak to a lawyer and his version is that the police responded with hostility, even though they said, yes, you can talk to a lawyer. But they suggested that would be a terrible idea. I mean, why don't those facts raise an issue, a fact as to whether this was voluntary or whether he felt he could leave? We can accept everything we said as true for this hearing. We don't have issues of fact here. This is the plaintiff's version of the event and we accept it. But the issue is, is the Second Circuit- Does not feel free to leave. I'll say maybe the jury could, but maybe the jury couldn't. But our issue is qualified immunity, even if there's a constitutional violation. Would every reasonable police officer know if they did this exactly the way we did it, that you were violating the Constitution? And if you look at my cases on page 26, 27, 28, there's Second Circuit cases that say a confession's voluntary, even though one detective makes reference to the electric chair and another engaged in chicanery by asserting he already had a strong case. And by telling the defendant his fingerprints matched the fingerprints left in the apartment. Police are, it's been approved all the time where they say- These are allowed to lie and exaggerate a bit. They are, under the Constitution, they are allowed to lie and exaggerate a bit. But every, it's not so one sided constitutionally that every person would know that this would be a constitutional violation to do the things they did. I have the Tankloff versus Sankowski case, I have United States versus Bayh, all Second Circuit, United States versus Ruggles. Detailed in my brief, this type of conduct is approved in the Second Circuit all the time, and that's why we would ask for judgment for our officers in reversing the district court. And I'll save the rest for rebuttal, thank you. Thank you, we'll hear from you. May it please the court, my name is Andrew Bowman and I represent John Mara. To find qualified immunity in this case, you must disregard the cornering and isolation of John Mara in the parking lot of Fairfield University with four armed officers. One of whom said, don't let him use his cell phone, and transported him to the public safety office. After telling a lawyer that they would meet at the Fairfield Police Department, and that John didn't need a lawyer, that he wasn't a target to Attorney Heller. Nevertheless, they intercepted him at Fairfield University. In the interrogation, they told him that judges and the heartless dude who hit this kid over the head with the bottle and said, catch me if you can. I think we understand what happened and the defendant is obliged on qualified immunity to accept your version of events. But I think the argument we've just heard now is that unless we were to find the photo spreads suggestive that there is no impermissible use of your client's statements because we would just take them out of the warrant and find probable cause even in their absence. What's your response to that? My client gave them the names of four exculpatory witnesses who he was with that night. When they showed- A death by warrant. Yes. When they showed Kazmierczak the initial photo array, he identified this fellow Beckett who wasn't at the party with 70% certainty. They then used Mara's picture again in the second array, suggesting to him that the guy in the first array should have been the person he chose in the first place. I don't see as a matter of law under the facts in this case that one could find that that was constitutionally permissible. Well, you understand that our precedent does allow a second photo spread to be created. And I thought the argument was that basically your client's pictures in the two spreads are so different that they would not have channeled the viewer's attention to Mr. Mara's second photograph. Do you want to respond to that? Sure. That's how I understood the argument. That's a jury question. The jury has to determine whether the photo was so similar that it could, that the first photo and the failure on the first photo and inclusion in the first array, and the subsequent inclusion in the second array was suggestive. That that is plausible. I mean, district judges make these decisions all the time on suppression motions, so courts do make them. And it's not apparent to me why the second photograph leads a viewer to your client. Because when a witness is shown an array and it includes a picture of person A, and they pick person B, and then subsequently nobody from the first array except person A is in the second array, it's suggestive. I'm not saying it's a matter of- You are holding in Concepcion and other cases following it. That's the problem for you. You see, I could see where you might have an argument if they had taken the same picture of your client and put it in the second spread. But that's not what they did. And so you have to clear the hurdle of our precedent that says it's not automatically precluded to show a second spread with the person's photograph in it. Isn't the issue whether some procedure creates a substantial risk of irreparable misidentification? I think counsel has suggested the question is whether a reasonable police officer would have known that showing the second spread violated the Constitution. But under the facts of this case, these officers knew that there was a very substantial likelihood that Merrill was the wrong guy. He gave them- Even assuming the photo arrays were suggestive, even assuming they thought he might be the wrong guy, there's still the qualified immunity inquiry. Would every reasonable police officer have known that this would violate clearly established law? I think under the definitions which the district court took into account. In Wolchick versus Rio, in Escalero versus Lund, these officers, I would suggest, deliberately distorted their view and the court's view, the reviewing court's view of the affidavit in support of the arrest warrant. Did the court conduct that inquiry on whether what reasonable police officers would have done, even assuming the array was suggestive? The court did set forth the tests in those two cases. The court was well- Did the court apply a test to what we're talking about right here? The court found that it was a jury question. The court felt that it could not decide that there was no genuine issue of material fact with respect to the identification procedure. Jan Card pressed at your argument a moment ago that the warrant affidavit somehow misled the issuing magistrate. My recollection of the affidavit is that it's remarkably detailed in recounting the police officer's actions, including recounting persons who made other identifications, exculpated your client. I didn't think there was any assertion that anything was falsely represented or that there were any material omissions. Well, they didn't include the scenarios that they gave to Mr. Mara with respect to him being viewed as a sociopath, remorseless, having an evil mindset, the whole coercive nature of the interrogation. Counsel is saying take your client's statement out. Well, he's also saying your client's statement is not that inculpatory, but we'll put that aside. He's saying take your client's statement out, it's still probable cause. Well, as far as the law is concerned, I think that you cannot say that there is either probable cause or arguable probable cause because our claim is that these officers put in a very important part of the interview, something they posited to Mr. Mara, and that was that he could have been so Perhaps I was not clear. Our precedent is that you take out the impermissible statement. So if we take out that he ever opened his mouth to the police, there would still be identifications, and that would be enough for probable cause, wouldn't it? Not where there was an initial failure to identify my client, Your Honor. Which the district court was told, the issuing magistrate rather, was told that, that there had been an initial failure of identification. Yes, that is true. What I'm saying is that you can't apply the latitude of arguable, probable cause to two police officers who conducted themselves in such a dishonest way, in such a coercive, in such an unconstitutional way. And that is our claim. I mean, if Your Honor is saying that as a matter of law, under every circumstance, it is not a jury issue in a 1983 case to determine. No, Your Honor, I'm saying counsel, we deal with the particular case. So you can make your argument, but please don't mischaracterize what I just asked you. I don't mean to do that, Your Honor, and you have my apology. But what I am saying is that you're doing it as a matter of law, that it's a matter of law just because there's a failure to identify someone in the initial array. If there's an identification in the second array. We assume all the facts in the plaintiff's favor, then it becomes a question of law. Well, it also becomes very difficult when you have somebody who is absolutely innocent. And that the identification was a misidentification. And that's what happened in this case. He was absolutely innocent, but he was absolutely drunk and behaving outrageously, yes? Yes, Your Honor, which is, as you know, which is not a crime. Which can leave, it might be different had he been sober and said, listen, I left before anything happened. He didn't arrive until after the assault occurred. I understand that, but could he, did he, is that what he said? Did he tell the police officer that? Yes, seven times. Seven times he told them that. And he gave them the name of the four people who were with him that evening. Kyle Cullen, Matt Kennedy, John Bradley, and his brother, Sean Mera. Your position is eventually he was talked into saying, well, maybe it was me. He was talked into saying I could have been so drunk that I don't remember. Yeah, that's all I have. Right, of course. Yes. Thank you. That's all I have. By way of rebuttal, once the court reaches the point where you ask counsel, or comment. It's not apparent to the court why the second photo array is suggestive. And I agree 100% with that observation. That gets us qualified immunity. That means that reasonable police officers could debate the constitutionality of whether or not the second photo array was suggestive. It's not apparent that that is a suggestive photo array. Are you saying that if it was only one photo array, the second one, this case would be over? Yes, of course. Of course, because then there would be no challenge then to the 100% photo identification. Supposing there was all kinds of evidence to the contrary, 100%. I mean, how many times are there 100, what police officer doesn't know how often somebody's 100% certain of an identity and it's not so? Well, it's a figure of speech, but it represents what's in the person's mind. If a person says, I'm 100% sure that's the one, you can say, well, maybe he's only 90% sure, or something like that. But this is a positive identification, and photo identifications alone are probable cause. There's many second circuit precedent for that. No matter what the other evidence is. Yes, and our officer was very fair, as Judge Radji pointed out. It was a very long affidavit. It put in the good, the bad, and the ugly. The first photo array, the second photo array, all the statements of the brother and the friends that said he wasn't there at the time, as well as what? There was a friend of the plaintiff who said he was there at the time, shirtless, jumping around, acting crazy. So it was all there for a prosecutor who said probable cause and a judge who said probable cause. That's got to be at least arguable probable cause. A couple other points. This is an objective standard, so for counsel to say that the motivations of the detectives were insidious, that that's improper. White versus Pauli, the Supreme Court case, latest one, emphasizes to the lower courts how it's critical to do the qualified immunity analysis. Look to the case law precedents, discuss the precedents and determine why clearly established or not clearly established. That simply wasn't done here. And other than that, I will rely on briefs and we are asking for a reversal of the district court and to enter judgment in favor of the defendants. Thank you very much. Thank you. We'll reserve decision. I don't believe Ms. Rosano has appeared and will take her case on submission. The remaining cases are on submission. Accordingly, I'll ask the clerk to adjourn.